# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAMS & CONNOLLY LLP,<br><br>   Plaintiff,<br><br>     v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>   Defendant. | Civil Action No. 09–651 (CKK) |

# MEMORANDUM OPINION
(August 4, 2010)

This is a Freedom of Information Act ("FOIA") case brought by Plaintiff Williams & Connolly LLP against the U.S. Securities and Exchange Commission ("SEC") relating to three requests for information submitted by Plaintiff to which the SEC has now responded. Presently pending before the Court is the SEC's [21] Motion for Summary Judgment, in which the agency contends that it has produced all responsive records except for those records withheld pursuant to a FOIA exemption. Plaintiff opposes the motion, arguing that the FOIA exemptions invoked by the SEC do not apply to certain records that were withheld. The SEC has filed a reply to Plaintiff's opposition, and the motion is now ripe for decision. After a thorough review of the parties' submissions and attachments thereto and applicable case law and statutory authority, the Court shall GRANT-IN-PART the SEC's Motion for Summary Judgment and DENY-IN-PART WITHOUT PREJUDICE with respect to one document withheld by the SEC under FOIA Exemption 6.

# I. BACKGROUND

*A.    SEC Investigations*

On June 14, 2000, the SEC filed a civil enforcement action against four former executives of Cendant Corporation ("Cendant") and its predecessor company CUC International, Inc. ("CUC") in connection with an alleged accounting fraud scheme that deprived shareholders of billions of dollars and inflated executive pay by millions. Def.'s Stmt.[1] ¶ 1. The defendants included Cosmo Corigliano, the former CUC chief financial officer and Cendant executive vice president, and Kevin Kearney, the former CUC director of financial reporting. *Id.* On June 6, 2000, Mr. Kearney consented to the entry of final judgment against him. *Id.* On April 16, 2004, Mr. Corigliano and his wife consented to the entry of final judgment against them; the final judgment required the Coriglianos to transfer most of their assets to a court-appointed receiver. *Id.* ¶ 2.    Following an investigation by the SEC, the government brought a criminal prosecution against Walter A. Forbes for securities fraud, ultimately obtaining a conviction on October 31, 2006. Pl.'s Stmt. ¶ 1. Williams & Connolly LLP served as legal counsel for Mr. Forbes during these proceedings. *Id.* During the course of litigation leading up to the trial, the government produced thousands of documents pursuant to Federal Rule of Criminal Procedure 16. *Id.* Some of these documents were notes of interviews or conversations that SEC attorneys and enforcement staff had with Cosmo Corigliano, Kevin Kearney, and/or their counsel in 1999 and 2000 during the SEC's investigation of Cendant and CUC. Pl.'s Stmt. ¶ 3.

---

[1] As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil Rule 7(h) (formerly Rule 56.1 when resolving motions for summary judgment). *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding district courts must invoke the local rule before applying it to the case). Thus, in most instances the Court shall cite only to one party's Statement of Material Facts ("Stmt.") unless a statement is contradicted by the opposing party.

B.  *FOIA Requests Submitted by Plaintiff*

On May 10, 2005, Plaintiff submitted a FOIA request to the SEC seeking records relating to Cosmo Corigliano and the Cendant investigation and securities enforcement action ("First Request"). Def.'s Stmt. ¶ 3. The SEC determined that it would need to review records from over 300 boxes of investigative documents to comply with the request, and the agency placed the request into its "first-in, first-out" processing system. *Id.* ¶¶ 4-5. At the end of 2008, the First Request came to the front of the processing queue, and the agency began collecting and processing responsive records. *Id.* ¶ 6.

On February 26, 2009, Plaintiff submitted a second FOIA request ("Second Request") to the SEC requesting communications with SEC Commissioners regarding a proposed settlement agreement between Mr. Corigliano and the SEC. Def.'s Stmt. ¶ 7. The same day, Plaintiff submitted a third FOIA request ("Third Request") to the SEC requesting records relating to Kevin Kearney, Crystal Journey Candles (a company owned by the Coriglianos), and the retainer that Mr. Corigliano paid his attorneys. *Id.* ¶ 8. The SEC's FOIA Office provided a copy of all three requests to each staff member in the SEC's Division of Enforcement who had worked on the Cendant litigation. *Id.* ¶ 9. The FOIA Office also contacted current and former SEC Commissioners and their staff regarding documents that may be responsive to the Second Request. *Id.* ¶ 12. After locating all potentially responsive records, the FOIA Office reviewed them in conjunction with the SEC's Office of General Counsel. *Id.* ¶ 16.

On May 19, 2009, the SEC produced to Plaintiff 2400 pages of records responsive to the First Request. Def.'s Stmt. ¶ 17. In response to the Second and Third Requests, the FOIA Office informed Plaintiff that it had already produced all nonexempt responsive records in response to

3

Plaintiff's First Request. *Id.* ¶ 18.

      C.      *The Filing of This Action*

Plaintiff filed this action in the U.S. District Court for the Eastern District of Virginia on February 18, 2009. On April 1, 2009, pursuant to the parties' agreement, Judge Claude M. Hilton ordered that the case be transferred to this Court. On October 6, 2009, the SEC filed its Motion for Summary Judgment, which included an index of documents withheld by the agency under various FOIA exemptions pursuant to *Vaughn v. Rosen*, 484 F.2d 802, 827 (D.C. Cir. 1973). The agency's *Vaughn* index lists 505 documents withheld pursuant to FOIA Exemptions 5, 6, and/or 7(C), 5 U.S.C. § 552(b)(5), (6), & (7)(C). *See* Def.'s Mot. for Summ. J., *Vaughn* Index. On October 30, 2009, the SEC produced 64 additional pages of records responsive to Plaintiff's FOIA requests, along with a supplemental *Vaughn* index listing one additional document withheld pursuant to FOIA Exemption 7(C). *See* Pl.'s Opp'n, Exs. I-J.

On November 20, 2009, Plaintiff filed its Opposition to Defendant's Motion for Summary Judgment. In its Opposition, Plaintiff contends that the SEC improperly withheld documents under FOIA Exemptions 5 and 6. Specifically, Plaintiff contends that the SEC should have produced all handwritten notes of SEC enforcement staff interviews or conversations with Cosmo Corigliano, Kevin Kearney, and/or their counsel that are listed in the SEC's *Vaughn* index (numbers 133-35, 142-44, 160, 166-70, 175-77, 207-08, 210, 217-23, 225-26, 228-34, 241, 244, 251, 260, 263-64, 302, 332, 340, 342, 347-48, 351, 356, 361-63, 433, 437, 439, 443, 445-46, 450-56, 458-59, 461-63, 466, 469, 472-73, 475-99, 501-05). In addition, Plaintiff contends that two documents (84, 254) for which the SEC claims an exemption should be produced after redacting any personal information relating to Cosmo Corigliano. Document 84 is described in

4

the *Vaughn* index as "Settlement proposal submitted to SEC by Kramer, Levin. Containing confidential, detailed financial information pertaining to the Corigliano family." *See Vaughn* Index at 5. After Plaintiff filed its Opposition, the SEC made a final supplemental production on December 11, 2009, producing segregable, nonexempt information as to document 254, which renders Plaintiff's objection moot as to this document. Plaintiff subsequently filed its Reply in support of its Motion for Summary Judgment.

## II. LEGAL STANDARD

In reviewing motions for summary judgment under FOIA, the Court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 522(a)(4)(B). In the FOIA context, "*de novo* review requires the court to 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA.'" *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

All underlying facts and inferences are analyzed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Only after an agency seeking summary judgment proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). In opposing a motion for summary judgment, a party must offer more than conclusory statements. *See Broaddrick v. Exec. Office of*

5

*the President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)).  Indeed, a plaintiff pursuing an action under FOIA must establish that the agency has improperly claimed an exemption as a matter of law or that the agency failed to segregate and disclose all nonexempt information in the requested documents.  *See Perry-Torres v. Dep't of State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005).

Congress enacted FOIA for the purpose of introducing transparency to government activities.  *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998).  Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold requested information.  *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9).  The agency must demonstrate the validity of any exemption that it asserts.  *See id.*; *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) ("Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents.")  In addition, summary judgment may be granted on the basis of the agency's accompanying affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search.  *See*

*SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Where the adequacy of the search is in doubt, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. But "[t]here is no requirement that an agency search every record system." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

An agency also has the burden of detailing what proportion of the information in a document is nonexempt and how that material is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Any nonexempt information that is reasonably segregable from the requested records must be disclosed. *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). In addition, district courts are obligated to consider segregability issues *sua sponte* even when the parties have not specifically raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

### III. DISCUSSION

The SEC has moved for summary judgment on the grounds that it has produced all nonexempt records responsive to Plaintiff's FOIA requests and has therefore met its burden under the statute. Plaintiff does not dispute that the SEC conducted an adequate search for records responsive to its requests and has therefore limited its opposition to two discrete issues: (1) whether the SEC properly withheld handwritten notes of SEC enforcement staff interviews or conversations with Cosmo Corigliano, Kevin Kearney, and/or their counsel pursuant to FOIA Exemption 5; and (2) whether the SEC properly withheld in its entirety a settlement proposal

containing confidential, detailed financial information pertaining to the Corigliano family.[2]  The Court shall address each of these issues below.

## A. Records Withheld Pursuant to FOIA Exemption 5

Plaintiff challenges the SEC's decision to withhold 103 documents listed on its *Vaughn* index as covered by FOIA Exemption 5.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 522(b)(5).  Exemption 5 applies to materials that would be privileged in the civil discovery context, such as materials protected by the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  In order to "justify nondisclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context."  *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996).  In this case, the SEC claims that the documents—which consist of handwritten notes by SEC Enforcement staff regarding conversations with Cosmo Corigliano, Kevin Kearney, and/or their counsel—are protected by the work product doctrine and the deliberative process privilege.  The Court shall consider each of these contentions below.

### 1. Attorney Work Product Doctrine

FOIA Exemption 5 incorporates the work product doctrine, which shields "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another

---

[2] Plaintiff does not challenge the SEC's redactions of personal information pursuant to FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C).  *See* Pl.'s Opp'n at 1 n.1.

party or its representative (including the other party's attorney, consultant, . . . or agent)." FED. R. CIV. P. 26(b)(3); *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). The work product doctrine protects both deliberative materials such as mental impressions, conclusions, opinions, and legal theories and factual materials prepared in anticipation of litigation. *Tax Analysts*, 117 F.3d at 620. In his declaration in support of summary judgment, David Frohlich, an Assistant Director in the SEC's Division of Enforcement, explains that the handwritten notes sought by Plaintiff were generated during the Cendant investigation in anticipation of litigation with Mr. Corigliano, Mr. Kearney, and others. *See* Def.'s Mot. for Summ. J., Decl. of David Frohlich ("Frohlich Decl.") ¶ 6. Plaintiff does not dispute this statement and concedes that these documents qualify as attorney work product. However, Plaintiff contends that the SEC has waived any work product privilege with respect to these documents because similar handwritten notes were disclosed to Plaintiff during the criminal prosecution of Mr. Forbes. According to the declaration of Christopher R. Hart, an attorney at Williams & Connolly LLP, at least eleven of the documents of handwritten notes identified in the *Vaughn* index were produced by the government during the Forbes matter. *See* Pl.'s Opp'n, Decl. of Christopher R. Hart ¶¶ 3-5.[3] Plaintiff thus contends that the government has "waived the work product privilege as to entire subject matter of handwritten notes between SEC staff and Corigliano, Kearney, or their respective counsel." Pl.'s Opp'n at 9.

As with the attorney-client privilege, a party may waive the work product privilege

---

[3] Because Mr. Hart has not seen the documents the agency used to prepare its *Vaughn* index, he can only say that "the government appeared to have already produced" these eleven documents. *See* Hart Decl. ¶ 4. For purposes of resolving this motion, the Court shall assume that the documents were in fact disclosed during the Forbes prosecution.

through disclosure. *See In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 159 F.R.D. 307, 310 (D.D.C. 1994) ("It seems . . . clear in this Circuit that the disclosure of documents protected by the attorney work product privilege waives the protections of the attorney work product privilege as to the documents disclosed.") However, "the test for waiving attorney work product protection is more stringent than the test for waiving attorney-client privilege." *Goodrich Corp. v. U.S. Envtl. Prot. Agency*, 593 F. Supp. 2d 184, 191 (D.D.C. 2009). Although disclosure of documents waives attorney-client privilege with respect to all other communications related to the same subject matter, the scope of "subject matter waiver" with respect to work product materials is more limited. *In re United Mine Workers*, 159 F.R.D. at 310-12; *Goodrich*, 593 F. Supp. 2d at 191-92. "[A] subject-matter waiver of the attorney work product privilege should only be found when it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed." *In re United Mine Workers*, 159 F.R.D. at 312. "Several factors figure into the analysis: whether disclosure was intentional or inadvertent, the breadth of the waiver sought, and the extent to which the requested documents would reveal litigation strategies or trial preparations." *Goodrich*, 593 F. Supp. 2d at 192 (internal citations omitted).

In this case, the disclosures purportedly giving rise to a waiver were made pursuant to Federal Rule of Criminal Procedure 16, which requires the government to provide to the defendant in a criminal proceeding, upon request, any item that is material to his defense or that the government intends to use in its case-in-chief at trial. *See* FED. R. CRIM. P. 16(e). Thus, the handwritten notes that were produced by the government during the Forbes prosecution were disclosed because they were material to Forbes's case. The fact that some handwritten notes by

10

SEC enforcement staff were material to Forbes's case, however, does not mean that all such handwritten notes involve the same subject matter. Indeed, the fact that only some handwritten notes were disclosed to Forbes indicates that other handwritten notes created during the SEC's investigation involved other subject matter that would not be material to Forbes's defense or prosecution. Based on this limited disclosure to Forbes's attorneys (Williams & Connolly LLP), Plaintiff seeks a waiver extending to all handwritten notes made by the SEC regarding meetings with Corigliano and Kearney and their counsel, regardless of the subject matter of those notes; this could result in the disclosure of any aspect of the SEC's investigation and reveal the SEC's litigation strategy. Finding a waiver in this context would be inconsistent with the policies behind the attorney work product privilege. *Cf. Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 606 (D.C. Cir. 2001) (discussing cases in which disclosure of work product material was "necessary to protect the adversary system"). To the extent that Plaintiff claims the SEC has waived its privilege about a specific document that was disclosed, such a disclosure renders Plaintiff's FOIA request for that document moot. *See Crooker v. U.S. Dep't of State*, 628 F.2d 9, 10 (D.C. Cir. 1980) ("Once the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made.")

Moreover, the disclosures on which Plaintiff's waiver argument is premised were made during a criminal prosecution brought by the Department of Justice, not by the SEC. The distinction is critical. In *Martin v. Department of Justice*, 488 F.3d 446 (D.C. Cir. 2007), the D.C. Circuit held that the Federal Deposit Insurance Corporation did not waive its work product privilege over a document that it provided to the Department of Justice, which then disclosed it to another party in litigation. *Id.* at 456. The Court found that "[s]uch production of privileged

11

information cannot be a waiver of the privilege." *Id.* Accordingly, the Court finds that the disclosure of certain handwritten notes by the Department of Justice during the Forbes prosecution did not waive the SEC's work product privilege with respect to the documents it claims are exempt under Exemption 5. Therefore, the Court shall award summary judgment to the SEC with respect to these records.[4] Rather than end the analysis here, however, the Court shall also examine the SEC's claim that these records are covered by the deliberative process privilege.

2. Deliberative Process Privilege

The SEC relies on the deliberative process privilege with respect to 99 of the 103 records challenged by Plaintiff. Exemption 5 shields from the mandatory disclosure requirements of the FOIA the deliberative process that precedes most decisions of government agencies. *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1047 (D.C. Cir. 1982). The exemption protects not only communications that are deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency. *Id* at 1048. Three policy purposes constitute the bases for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against the public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980). For the privilege to apply under Exemption 5, the material must be both

---

[4] Although the Court has an obligation to address issues of segregability *sua sponte*, "[i]f a document is fully protected as work product, then segregability is not required." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005).

predecisional and deliberative. *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988). The exemption "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Coastal States*, 617 F.2d at 866, as well as documents that reflect deliberations comprising the process by which government policy is formulated, *Mead Data*, 566 F.2d at 256.

Plaintiff contends that the documents are issue are merely "notes of conversations" with no listed recipients, suggesting that there is nothing deliberative about these documents. To the extent that these documents contain merely factual material such as statements made by Corigliano or Kearney, they do not fall within the deliberative process privilege. *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (per curiam) ("The deliberative process privilege does not . . . protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.") The fact that such statements may be protected as work product does not place them within the protection of the deliberative process privilege; the two privileges "are not coterminous in their sweep." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 372 (D.C. Cir. 2005). However, according to the declaration of David Frohlich, these handwritten notes also contain the mental impressions of SEC enforcement staff, including their recommendations and thoughts concerning the SEC's investigation. *See* Frohlich Decl. ¶¶ 7-8. Thus, these documents do reflect opinions by agency staff that are predecisional and deliberative in nature. The fact that there are no recipients listed on the *Vaughn* index does not render them non-deliberative; the courts have held that a document may be deliberative even it is not

13

circulated to other employees. *See, e.g.*, *Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 14-15 (D.D.C. 2000).

Accordingly, the Court finds that deliberative material contained in the handwritten notes falls within the deliberative process privilege and is exempt from disclosure under 5 U.S.C. § 552(b)(5). However, the privilege does not cover factual material contained in those notes unless it is inextricably intertwined with deliberative notes. Thus, the SEC's withholding of deliberative material in these handwritten notes may alternatively be justified under the deliberative process privilege encompassed in FOIA Exemption 5.

    B.    *Records Withheld Pursuant to FOIA Exemption 6*

Plaintiff challenges the SEC's invocation of Exemption 6 in withholding one document listed on the *Vaughn* index (number 84). Plaintiff initially objected to a second document (number 254) in its Opposition, but the SEC subsequently produced a redacted version removing any personal information. *See* Def.'s Reply, Ex. A (12/11/09 Letter). Plaintiff has not challenged any of the SEC's redactions in this action, and Plaintiff did not attempt to respond to the SEC's argument in its Reply that Plaintiff's objection to document 254 is now moot. Accordingly, the Court finds that Plaintiff's objection with respect to document 254 is moot. With respect to document 84, the SEC relies on both Exemption 6 and Exemption 7(C). Plaintiff did not challenge the SEC's invocation of Exemption 7(C) with respect to this document, and therefore the Court may treat this argument as conceded. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may

treat those arguments that the plaintiff failed to address as conceded.")  However, the Court shall also consider whether the SEC's invocation of Exemption 6 was proper.

Exemption 6 protects information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 522(b)(6).  The term "similar files" is construed broadly and is "intended to cover detailed Government records on an individual which can be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted).  "The threshold is fairly minimal, such that all information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained."  *Conception v. FBI*, 606 F. Supp. 2d 14, 35 (D.D.C. 2009) (citations and internal quotation marks omitted).  In considering whether an agency has properly invoked Exemption 6, courts must balance the privacy interest in nondisclosure against the public interest in the release of the information.  *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999)  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).

The SEC's *Vaughn* index describes document 84 as a two-page "[s]ettlement proposal submitted to the SEC" by counsel for Mr. Corigliano "[c]ontaining confidential, detailed financial information pertaining to the Corigliano family."  According to the declaration of Margaret Celia Winter, the SEC's FOIA and Privacy Act Officer, this document contains confidential and detailed personal and financial information pertaining to Mr. Corigliano, his wife, his minor children, and his parents.  *See* Def.'s Mot. for Summ. J., Decl. of Margaret Celia Winter ¶ 15.  Mr. Corigliano was required to provide this information to the SEC in order to

reach a budget agreement with the SEC as to how much money he and his family could spend while the SEC's litigation was pending, as well as for purposes of facilitating settlement. *Id.* According to Ms. Winter, the SEC only withheld documents to the extent necessary to protect the privacy interests of Mr. Corigliano and his family, and the agency disclosed any segregable nonexempt information that could be disclosed. *Id.* ¶¶ 16, 18.

Plaintiff does not dispute that the financial information contained in document 84 may be withheld pursuant to Exemption 6. However, Plaintiff argues that the agency should have segregated the financial information from the document and produced the nonexempt information in the document. *See* Pl.'s Opp'n at 13. "If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions." *Conception*, 606 F. Supp. 2d at 44 (citing 5 U.S.C. § 552(b). An agency's affidavits must show with "reasonable specificity" why the documents cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). Plaintiff argues that Ms. Winter's statement in her declaration that all reasonably segregable nonexempt information was disclosed is too conclusory to show that the information in document 84 could not be further segregated. The Court agrees. Although it is certainly plausible that a two-page settlement proposal based on personal financial information may be meaningless with the personal information redacted (as the SEC argues in its briefs), the declarations provided by the agency do not show with reasonable specificity that the nonexempt information in document 84 is inextricably intertwined with exempt portions. Accordingly, the Court shall deny the SEC's

16

motion for summary judgment without prejudice as to document 84.[5] The Court shall order the SEC to either produce document 84 in redacted form or file a renewed motion for summary judgment with a declaration explaining why the nonexempt information cannot be segregated.

### IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT-IN-PART and DENY-IN-PART WITHOUT PREJUDICE Defendant U.S. Securities and Exchange Commission's [21] Motion for Summary Judgment. Defendant's motion shall be granted except with respect to the segregability of document number 84 on the agency's *Vaughn* index. An appropriate Order accompanies this Memorandum Opinion.


Date: August 4, 2010

>              */s/*
> COLLEEN KOLLAR-KOTELLY
> United States District Judge

---

[5] The Court has an obligation to address segregability with respect to both Exemption 6 and Exemption 7(C). Plaintiff's concession that Exemption 7(C) applies does not provide an alternative basis for summary judgment with respect to this document, since the lack of a sufficient explication as to segregability would apply to either exemption.